### CITY OF WACO v. BRYAN.

(Circuit Court of Appeals, Fifth Circuit. January 26, 1904.)

No. 1,282.

1. BANKRUPTCY—CITY TAXES—ALLOWANCE.

Under Bankr. Act July 1. 1898, c. 541, § 64a. 30 Stat. 563 [U. .S. Comp. St. 1901, p. 3447], providing that the court shall order the, trustee to pay all taxes legally due and owing by the bankrupt to the municipality in advance of the payment of dividends to creditors, etc., a city's claim against a bankrupt for taxes assessed against him is entitled to priority of payment by the trustee, though the property on which the taxes were levied never came into the hands of the trustee.

2. SAME—LIEN.

Where property on which taxes were assessed by a city against a bankrupt never came into the hands of the trustee, the city is not entitled to a lien on the bankrupt's assets for the payment of such taxes.

Shelby, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Texas.

H. N. Atkinson and Eugene Williams, for appellant.
T. F. Bryan, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The city of Waco, county of McLennan, state of Texas, in the bankruptcy of Bart Moore, made proof of a debt for $503.72, taxes levied and legally due and owing by said bankrupt to said city, and asked for priority of payment and recognition of a lien. The referee rejected the demand on the ground that

the property on which the taxes were levied never came into the hands of the trustee. On certificate, the judge of the District Court affirmed this ruling, and ordered that "the claim of the city of Waco be, and it is hereby, denied, as to the right of priority of payment, or as to security on any property of the estate," and on this ruling the case is brought here for review.

It is not disputed by anything we find in the transcript that the said taxes are legally due and owing by the bankrupt to the city of Waco, irrespective of any lien for taxes on the property assessed, and arising under the law of Texas.

The case, then, comes under the provisions of section 64a, Bankr. Law July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], as follows:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

This section is perfectly plain, and seems to admit of very little, if any, construction. It is contended that it is inequitable for the bankrupt's estate to be compelled to pay by priority taxes originally levied on property which does not come into the hands of the trustee. To this it is sufficient answer to say that the priority to be given payment of claims against the bankrupt is within the control of the lawmaker, and is absolutely fixed by the statute, and the rule therein declared cannot be varied to meet ideas of what equity and good conscience may require. From the foundation of the government, it has been the policy of the United States to exact priority in favor of the United States in all cases of insolvency. This policy is declared in section 3466 of the Revised Statutes [U. S. Comp. St. 1901, p. 2314], as follows:

"Priority Established. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Under this statute there seems to be no case for the injection of equity, or the suggestion that, through pursuing some other party, and marshaling liens upon some outside estate, the United States' demands can be eventually satisfied. The sovereign cannot be hindered or embarrassed or postponed in the collection of his revenues. This policy was recognized in all the bankruptcy laws heretofore passed. Section 62 of the bankruptcy act of April 4, 1800, c. 19, 2 Stat. 36, provides that "nothing contained in this law shall in any manner affect the right of preference to prior satisfaction of debts due the United States." Section 5 of the act of August 19, 1841, c. 9, 5 Stat.

444, gives priority to the United States "for all debts due by such bankrupt to the United States." Section 28 of the act of March 3, 1867, c. 176, 14 Stat. 530, gives priority, first, "for the fees, costs and expenses of suit," etc.; second, "for all debts due the United States and all taxes and assessments under the laws thereof"; third, "for all debts due to the state in which the proceedings in bankruptcy are pending, and all taxes and assessments made under the laws of such state." The present bankruptcy law gives priority for all taxes legally due and owing by the bankrupt to the United States, the state, county, district, or municipality, in advance of the payment of dividends to creditors. In short, it puts taxes due the state, counties, and municipalities upon the same footing as taxes due the United States. On the plain construction of section 64a of the present law, and particularly in the light of past legislation on the subject, there is no room to hold that it makes any difference whatever, as to the right of priority, whether property on which taxes were assessed ever came into the hands of the trustee. The test is given in the statute: Are the taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality claiming the same? If yea, they are entitled to be paid in advance of the payment of dividends to creditors, for thus saith the law.

As to the matter of a lien, which, it seems, was claimed by the city of Waco, the referee ruled correctly. If the property did not come into the hands of the trustee, the court can allow no lien on it.

The judgment of the District Court is reversed, and the cause is remanded, with instructions to order the trustee to pay the taxes legally due and owing by the bankrupt to the city of Waco in advance of the payment of dividends to creditors.

SHELBY, Circuit Judge (dissenting). I respectfully dissent from part of the opinion and judgment of the court.

The city of Waco, a municipal corporation, proved a debt for $503.72 due to it against the bankrupt for taxes for the years 1897 to 1902, inclusive. In the proof of the debt, it is shown that it is secured by "lien upon property, given by the city charter." It also appears from the record that the larger part, if not the whole, of the taxes, is upon real estate situated in Waco, and that part of such real estate, on which $288.42 of the taxes in question was levied, "had, previous to the bankruptcy proceedings, been sold under execution to the Waco Building Association." It is shown by the record that only a small portion of the property on which taxes were levied has come into the hands of the trustee. The amount of the taxes on the property which came into his hands is about $40. The referee ordered that the trustee be authorized and required to pay this sum, and held that he should not pay the taxes on the property which did not come into the hands of the trustee. The district court affirmed this order, and the case is brought here on appeal.

Section 64a of the bankruptcy law of 1898 (Act July 1, 1898, 30 Stat. 563, c. 541 [U. S. Comp. St. 1901, p. 3447]), which is copied in full in the opinion of the court in this case, provides that the "court shall order the trustee to pay all taxes legally due and owing by the

bankrupt * * * in advance of the payment of dividends to creditors." The fact that property on which the taxes were due did not come into the hands of the trustee is of itself no sufficient reason for his refusing to pay the taxes on it due and owing by the bankrupt. I concur in the opinion of the majority in that conclusion. But the record shows other facts which doubtless influenced the learned trial judge in refusing to direct the trustee to pay all the taxes claimed by the appellant.

It appears from the record that the payment by the trustee in bankruptcy of the $288.42 of the taxes will inure solely to the benefit of the Waco Building Association. That association, having bought certain real estate of the bankrupt at execution sale before the proceedings in bankruptcy, will have to pay the taxes on the property bought by it, if they are not paid by some one else, or the property can be sold for their satisfaction. The association bought the property charged with the lien for these taxes, and it is to be presumed that the incumbrance lessened the amount for which it was sold. The appellant should be required to enforce its lien against this property, and in that way satisfy its claim for taxes thereon. If it failed to collect the taxes by the enforcement of its lien, they should be paid in full out of the assets in the hands of the trustee. But unless resort to them is necessary, the assets should not be taken out of the hands of the trustee, to the injury of the general creditors, and paid out for the benefit of the Waco Building Association.

The $288.42 being secured by lien on property to which the trustee for the general creditors has no claim, and such property being held and owned by a building association which equitably owes the debt, justice and fair dealing require the appellant to exhaust its security before resorting to the assets in the hands of the trustee. But it is objected that this would be "the injection of equity" into the case. No one questions that the bankruptcy act itself must control in the distribution of the bankrupt's estate. But so far from ignoring equitable principles in the administration of the trust, its proper administration is essentially equitable; the bankruptcy court, of course, following the bankruptcy act, just as a court of equity follows the law. Judge Blatchford has truly said that in fact "a court of bankruptcy is a court of equity." In re Moller, 8 Ben. 526, Fed. Cas. No. 9,699.

In Collier on Bankruptcy (4th Ed.) 459, the author gives his own view of the proper construction of the section of the bankruptcy act here in question:

"Construed strictly, the words of this subsection (section 64a) also lead to the result that taxes must be paid in any event. But it is thought—the manifest intention of Congress being merely to insure payment—if the tax is by law made a lien or charge on the bankrupt's property, the same equitable principle which denies to the individual whose debt is fully secured the right to share in the general fund applies to the tax claimant. This is especially true when the payment would inure solely to the benefit of a secured creditor. Any other decision violates equity—indeed, often sanctions confiscation."

It is true that the author says that the weight of authority "seems to sustain the harsher view." An examination, however, of the authorities which he cites, and of others, shows that what authority

there is on the subject sustains the equitable view which he has expressed in the text.

Brandenburg, in his work on Bankruptcy (2d Ed.) 608, says:

"A trustee should not pay taxes when such payment would operate to the advantage of a third party against another; they being, in any event, secure."

Judge Townsend held in In re Veitch (D. C.) 101 Fed. 251, that where real estate of a bankrupt was mortgaged, and also subject to a lien for taxes, and is sold to the mortgagee, the court will not order the taxes to be paid out of the funds of the estate, since such payment would operate to the benefit of the mortgagee, in prejudice of the rights of general creditors, and since the taxes are, in any event, secure.

Judge Hanford held in In re Conheim, 100 Fed. 268, that the manifest intent of section 64a is that, while the estate is in the hands of the trustee, his custody of it shall not operate as a bar to the collection of the taxes which would be collectible under the law, if the property had remained in the possession and control of the bankrupt himself.

In In re Hollenfeltz (D. C.) 94 Fed. 629, a bank had bought the property on which taxes were due. It paid the taxes, and sought to be reimbursed. Judge Shiras said the presumption is that the amount paid by the bank at the sale was the sum the bank was willing to give for the property in its then condition; that is, subject to the lien of the unpaid taxes. In that case the bank paid the taxes, and sought reimbursement from rent received from the realty by the trustee. The court held that the bank took the property charged with the lien of the taxes, and should pay them, and could not be reimbursed out of the assets in the hands of the trustee.

In Foster v. Inglee, 13 Nat. Bankr. R. 239, Fed. Cas. No. 4,973, the tax collector made proof of taxes assessed on the real estate of the bankrupts prior to the commencement of the proceedings in bankruptcy. He asked for an order for their payment. The bankruptcy act of 1867 gave state taxes duly assessed a preference over general creditors. The court held that, where the land has been taken by creditors under attachments valid as against the assignees, it would be inequitable to allow these creditors to escape the burden of the taxes on the estate which they had acquired under their levy, if the taxes were at the time of the levy allowed, and deducted from the valuation made by the appraisers.

In re Tilden (D. C.) 91 Fed. 500, which is sometimes cited as opposed to these authorities, is based largely on the construction of a state homestead law.

Section 57h of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 560, 561 [U. S. Comp. St. 1901, p. 3443]) is probably not applicable to this case, except as indicating the intention of Congress that secured creditors should apply any securities held by them to the payment or part payment of their claims, "and that a dividend shall be paid only on the unpaid balance." In a case like this, the purchasers of the property under execution or mortgage sale should be required to pay the taxes on the property purchased. The ap-

pellant shows that it has a lien on the property for the taxes. It ought not, therefore, to be allowed to take the fund in the hands of the trustee from the general creditors, when it can just as easily collect its debt out of the property on which it has the lien. Under such circumstances, the payment of the taxes by the trustee inures to the benefit only of the purchasers of the real estate at the execution of mortgage sale. The same principle would be involved if the purchaser of the bankrupt's property under execution were to deposit in bank the amount of taxes due on the property to pay the taxes, but subject to the opinion of the bankruptcy court, and then send the tax collector to the court with the claim for taxes. Should the court in such case take the assets, the property of the general creditors, to use them for the sole benefit of the purchaser at execution sale, when the tax collector had other means to easily collect the taxes from one who equitably should pay them?

The bankruptcy act is silent on the subject of burdensome or onerous property, yet the courts generally recognize the right of the trustee, subject to the control of the bankruptcy court, to abandon or disclaim such property. He may disclaim property incumbered beyond its value. In re Dillard, 9 Nat. Bankr. R. 8, Fed. Cas. No. 3,912; Glenny v. Langdon, 98 U. S. 20, 31, 25 L. Ed. 43; Collier on Bankruptcy (4th Ed.) 517. When the incumbrance is in part city taxes—a case which may often arise—should the court require the trustee to pay the taxes on the burdensome property that he would be permitted to disclaim? Would not the proper course be to require the city first to enforce its tax lien, such lien almost invariably being superior to other incumbrances? If the property did not satisfy the taxes, the city would lose nothing, for the trustee must then pay the part left unpaid.

In Equitable Loan Co. v. Moss (C. C. A.) 125 Fed. 609, decided by this court, the trustee was required to surrender a manufacturing plant, the property of the bankrupt, as burdensome, it being mortgaged beyond its value, and expensive to insure and guard; and the order to surrender the property was made "on condition that it [the mortgagee] reimburse the trustee so far as he has heretofore paid taxes" on the property. The case shows that the learned counsel for the mortgagee agreed that such order be made. In any case where the payment of the taxes would inure solely to the benefit of the incumbrancer, who was equitably charged with the duty of payment, it seems right that the bankruptcy court should refuse to direct the payment of the taxes till the remedies of the city against the property and the incumbrancer were exhausted.

It is within the power of the District Court to withhold a distribution of the assets until the city can make a proper effort to enforce its lien upon the real estate in question. If it succeeds in collecting its debt, the purpose of the statute (section 64a) is fully complied with, because the taxes will be paid. If it fails to collect the debt, or fails to collect part of it, such debt, or such part of it, should be paid in full out of the assets in the hands of the trustee. The case of Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, shows that in a proper case the District Court should

suspend the proceedings in bankruptcy for a reasonable time to allow proceedings in a state court, or other court having jurisdiction, for the enforcement of the rights of parties to such proceedings.