**In re CO–BUILD COMPANIES, INC. a/k/a West Indies Enterprises, Inc., Bankrupt.**

**Bankruptcy No. 75–287.**

United States Bankruptcy Court, E. D. Pennsylvania.

July 14, 1982.

Arthur E. Sklar, Levine, Staller & Sklar, P. A., Atlantic City, N. J., for Sanford and Joy Miller, Officer of the debtor corporation.

Stuart H. Savett, Harold E. Kohn, P. A., Philadelphia, Pa., for debtor, Co-Build Companies, Inc. a/k/a West Indies Enterprises, Inc.

Marvin Krasny, Adelman & Lavine, Philadelphia, Pa., for trustee, Richard I. Rubin.

Richard I. Rubin, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether an officer of the debtor corporation is entitled to be subrogated to the government's tax claim against the debtor where the government has collected funds from the officer to pay that claim. We conclude that the officer is entitled to be subrogated to the government's tax claim.

The facts of the instant case are as follows:[1] On February 18, 1975, Co-Build

---

**8.** *See, e.g., In re McMillan*, 579 F.2d 289, 292 (3d Cir. 1978).

**1.** This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

Companies, Inc. ("the debtor") filed a petition for an arrangement under chapter XI of the Bankruptcy Act ("the Act").[2] The Internal Revenue Service ("the I. R. S.") filed priority proofs of claim against the debtor in those proceedings for the amount of taxes due to it by the debtor.[3]

Sanford Miller ("Miller") was an officer of the debtor prior to the date it filed its petition and during a period when the debtor failed to pay the taxes due to the I. R. S. Consequently, the I. R. S. notified Miller that it intended to penalize him (as a person in the debtor corporation who was required to collect, account for and pay over withholding and other taxes to the I. R. S.) for failing to take the appropriate action to ensure that the debtor paid those taxes.[4] Pursuant to that notice, the I. R. S. subsequently applied $23,727.55 of a tax refund due to Miller to repay the tax claim owed by the debtor. As a result, Miller has filed the instant application for an order subrogating him to the tax claim of the I. R. S. against the debtor.

■ In the case of *American Surety Co. v. Bethlehem National Bank*,[5] the United States Supreme Court explained the doctrine of subrogation:

Among the oldest of these [equitable doctrines evolved by the courts] is the rule of subrogation whereby one who has been compelled to pay a debt that ought to have been paid by another is entitled to exercise all remedies which the creditor possessed against that other.[6]

Subrogation is not a matter of strict right but is purely equitable in nature, dependent upon the facts and circumstances of each particular case.[7] The courts will not use the doctrine of subrogation (1) where it would be inequitable to do so, (2) where it would work injustice to others having equal equities or (3) where it would operate to defeat another's legal rights.[8]

The case of *Dayton v. Stanard*[9] was the first case in which the United States Supreme Court applied the doctrine of subrogation to a government right to priority. In *Dayton*, the Supreme Court held that bona fide purchasers at an invalid tax sale, who had paid the taxes on the property, should be compensated for their loss. Accordingly, the court allowed the purchasers to be subrogated to the government's priority in the bankrupt's assets for the price paid by them at the invalid tax sale.[10]

---

2. While the Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L.No.95–598, § 403, 92 Stat. 2683 (1978).

3. Section 64(a)(4) of the Act provided:
   a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be . . . (4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy.
   11 U.S.C. § 104(a)(4) (repealed 1978). *See also*, 11 U.S.C. § 35(a)(1) (repealed 1978) (nondischargeable tax claims).

4. Section 6672 of the Internal Revenue Code provides:
   Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner

to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.
26 U.S.C. § 6672. Miller has not contended herein that the I. R. S. had no right to take the actions that it did pursuant to the section quoted above.

5. 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241 (1941).

6. *Id.* at 317, 62 S.Ct. at 228.

7. *Gray v. Jacobsen*, 13 F.2d 959 (D.C.Cir.1926).

8. *Id.* at 960.

9. 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190 (1915).

10. *Id.* 241 U.S. at 590, 36 S.Ct. at 696.

In the case of *In re Rogers*,[11] the United States District Court for the Southern District of California held that a claim for a payment made prior to bankruptcy by a surety on a bond given by the bankrupt to secure the payment of taxes was entitled to priority under § 64(a)(4) of the Act. The District Court gave an extensive review of cases where a party had sought to be subrogated to tax claims against a bankrupt or debtor:

Of course, subrogation will be denied to the mere volunteer, *In re Green River Jockey Club*, D.C., 5 F.2d 259; *In the Matter of Inland Gas Corp.*, 6 Cir., 91 F.2d 113, and it will be denied to one who engineers a tax sale to buy the bankrupt's worthless equity for the sole purpose of claiming the government's priority distribution. *In the Matter of Gracey*, D.C., 241 F. 981. On the other hand, there is a respectable split of authority on the question of whether a purchaser at a tax sale may be subrogated to the priority of the taxing unit. Holding that such purchaser may not be so subrogated are: *In re Hollenfeltz*, D.C., 94 F. 629; *In re Veitch*, D.C., 101 F. 251; *In re Minogue*, D.C., 39 F.2d 239; *In re Brinker*, D.C., 128 F. 634; and in the *Matter of Hibbler Machine Supply Co.*, D.C., 192 F. 741. Contra are the more recent cases of *In the Matter of Clark Realty Co.*, 7 Cir., 253 F. 938, and in the *Matter of Ingersoll*, 10 Cir., 148 F.2d 282.

Subrogation to the priority of Section 64, sub. a(4) has been allowed in the case of purchasers who bought at a sale of real property belonging to a bankrupt estate, later declared invalid, and who paid the taxes due on such realty at the time of that sale, *Dayton v. Stanard*, 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190, and in the case of unsecured creditors of a bankrupt who advanced sufficient amounts to

the United States to compromise a claim against the bankrupt for taxes due. *In re Baltimore Pearl Hominy Co.*, 4 Cir., 5 F.2d 553. The presence of a lien is unnecessary. *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284.[12]

In *In re Columbia Tobacco Co., Inc.*[13] the United States District Court for the Eastern District of New York also held that a bankrupt's surety, who had paid state and local taxes owed by the bankrupt corporation, was entitled to the governments' priorities in the distribution of the bankrupt's estate. In this regard, the court stated:

The priority which pertains to the sovereign is not hedged about by such divinity that it cannot accrue to those who, as sureties, place the government in funds, through the payment of taxes. *Dayton v. Stanard*, 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190; *Fidelity & Casualty Co. v. Massachusetts Mutual Life Ins. Co.*, 4 Cir., 74 F.2d 881; *In re Baltimore Pearl Hominy Co.*, 4 Cir., 5 F.2d 553. See also Restatement of the Law—Restitution Sec. 162 f.[14]

Applying the reasoning of the above cases to the case at bar, we conclude that the doctrine of subrogation is applicable and that Miller is entitled to a claim against the debtor corporation in the amount of the taxes paid by him for the debtor corporation ($23,727.55) and with the same priority under § 64(a)(4) that the I. R. S. would have been entitled to. Although Miller was not a surety for the debtor to secure the payment of taxes, as were the claimants in *Rogers* and *Columbia Tobacco*, Miller was certainly not a "mere volunteer."[15] Furthermore, since there is nothing special about the government's tax priority under § 64(a)(4),[16] we conclude that the doctrine of subrogation applies herein. Pursuant to that doctrine, Miller as one who has been compelled to pay a debt of the debtor corpo-

---

11. 101 F.Supp. 555 (S.D.Cal.1951).

12. *Id.* at 556.

13. 38 F.Supp. 148 (E.D.N.Y.1941).

14. *Id.* at 149.

15. *See In re Rogers*, 101 F.Supp. 555, 556 (S.D. Cal.1951), *Citing, In re Green River Jockey Club*, 5 F.2d 259 (W.D.Ky.1925).

16. *See In re Columbia Tobacco Co., Inc.*, 38 F.Supp. 148, 149 (E.D.N.Y.1941).

ration to the I. R. S., is entitled to exercise all the remedies which the I. R. S. possessed against the debtor, including the right to a priority claim under § 64(a)(4).[17]

17. *See American Surety Co. v. Bethlehem National Bank*, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941).